**KAYE, ROSE & PARTNERS, LLP**
Bradley M. Rose (SBN 126281)
Frank C. Brucculeri (SBN 215946)
Daniel F. Berberich (SBN 215946)
1801 Century Park East, Suite 1500
Los Angeles, California 90067-2302
Telephone: (310) 551-6555
Facsimile: (310) 277-1220
E-mails: fbrucculeri@kayerose.com
         dberberich@kayerose.com

Attorneys for Plaintiffs
NORTH OF ENGLAND PROTECTING AND INDEMNITY ASSOCIATION LIMITED, and UNITED AFRICA PETROLEUM LIMITED, and GENERAL NATIONAL MARITIME TRANSPORT COMPANY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH OF ENGLAND PROTECTING AND INDEMNITY ASSOCIATION LIMITED, UNITED AFRICA PETROLEUM LIMITED and GENERAL NATIONAL MARITIME TRANSPORT COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>TESORO REFINING AND MARKETING COMPANY, LLC; and DOES 1 TO 10 INCLUSIVE,<br><br>Defendants. | Case No.: 2:13-cv-00956-~~DSF~~-MRW<br><br>**IN ADMIRALTY**<br><br>**FIRST AMENDED COMPLAINT FOR NEGLIGENCE** |

Plaintiffs NORTH OF ENGLAND PROTECTING AND INDEMNITY ASSOCIATION LIMITED, UNITED AFRICA PETROLEUM LIMITED and GENERAL NATIONAL MARITIME TRANSPORT COMPANY, by and through their undersigned attorneys, complain and allege as follows:

///

///

- 1 -
**FIRST AMENDED COMPLAINT**

## JURISDICTION AND VENUE

1. This is an admiralty and maritime claim subject to this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333, and is also an admiralty claim within the meaning of F.R.Civ.P. 9(h) inasmuch as the incident giving rise to the claims herein occurred on U.S. navigable waters. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that it is a civil action between citizens of a State and citizens of a foreign state and the matter in controversy exceeds $75,000.

2. Venue in the Central District of California is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) and (d).

## PARTIES

3. Plaintiff NORTH OF ENGLAND PROTECTING AND INDEMNITY ASSOCIATION LIMITED (hereinafter individually referred to as "North" and collectively referred to as one of the "Plaintiffs") is a business entity organized under the laws of the England with its principal place of business located in Newcastle upon Tyne, United Kingdom.

4. At all times material herein, the vessel M/T ALJALAA, a tanker vessel sailing under the Libyan flag, IMO number 9343338 (hereinafter referred to as the "Vessel"), and/or its owners/operators were entered with North who provided indemnity cover for the marine liabilities of M/T ALJALAA. By virtue of the payments made and/or liabilities assumed on behalf of M/T ALJALAA (as set forth more particularly herein below) as required by the terms of North's indemnity cover, Plaintiff North is subrogated in part to the rights, claims and/or causes of action of M/T ALJALAA and/or its owners/operators against the Defendants as hereinafter set forth.

5. Plaintiff UNITED AFRICA PETROLEUM LIMITED (hereinafter individually referred to as "UAPL" and collectively referred to as one of the "Plaintiffs") a business entity with its principal place of business in Wanchai, Hong Kong. At all

relevant times, UAPL was the owner of the Vessel.

6. Plaintiff GENERAL NATIONAL MARITIME TRANSPORT COMPANY (hereinafter individually referred to as "GNMTC" and collectively referred to as one of the "Plaintiffs") is a business entity organized under the laws of Libya with its principal place of business in Tripoli, Libya. At all relevant times, GNMTC was the operator of the Vessel.

7. Defendant TESORO REFINING AND MARKETING COMPANY, LLC (hereinafter individually referred to as "Tesoro" and collectively referred to as one of the "Defendants") is a business entity organized under the laws of the State of Delaware with its principal place of business located at 19100 Ridgewood Parkway, San Antonio, Texas 78259. At all relevant times Tesoro was doing business in and had significant contacts with the State of California and the County of Los Angeles.

8. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through 10 (individually referred to as DOES 1 through 10 and collectively referred to as the "Defendants"), inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as fictitiously named Defendants is, in some manner, responsible for the events and occurrences herein referred to, and caused the damage to Plaintiffs as herein alleged. At all relevant times DOES 1 through 10 were doing business in and had significant contacts with the State of California and the County of Los Angeles. When Plaintiffs ascertain the true names and capacities of DOES 1 through 10, they will seek to amend their Complaint setting forth the same.

9. Plaintiffs are informed and believe and thereon allege that at all times relevant hereto, each of the Defendants, including DOES 1 through 10, was the agent or employee of each of the remaining Defendants, and was acting within the scope and course of said employment and/or agency at the time of the acts complained of herein.
///

**GENERAL ALLEGATIONS**

10. On February 21, 2011, the Vessel, carrying a load of petroleum oil for discharge, was docked at the Tesoro Terminal, Berth 84, Port of Long Beach, California.

11. After the Vessel docked at Berth 84, Defendants placed an oil retention boom around the outboard (starboard or off-shore) side of the Vessel to contain and retain any oil that might be accidentally discharged. In booming the Vessel, Defendants negligently failed to anchor the boom a sufficient distance from the Vessel required for its retaining capabilities to be properly utilized and used as intended, and instead placed it so that it hugged the starboard side of the Vessel, effectively preventing an adequate on-water containment of any oil accidentally discharged. Such acts were negligent and in violation of industry custom and practice as well as Defendants' own procedures and practices. Defendants also engaged in other acts or omissions more fully set forth herein that were negligent, improper, unlawful, contrary industry custom and practice and/or contrary to Defendants' own procedures and practices.

12. At approximately 16:48 hours on February 21, 2011, a transfer of oil was commenced between the Vessel and the terminal.

13. Subsequently, one of the crewmembers noticed the Vessel's Diesel Oil Drain Tank was a little high and the decision was made to empty it. At approximately 18:00 hours, a crewmember of the Vessel commenced an internal tank transfer of 500 liters of low sulfur fuel marine gas oil ("LSMGO") from the Vessel's Diesel Oil Drain Tank to the Vessel's Diesel Oil Storage Tank. In order to perform the transfer, the crewmember first closed the valve on a common fuel line and then opened another valve for the Fuel Oil Drain Tank so that the LSMGO could flow from the Diesel Oil Drain Tank to the Diesel Oil Storage Tank. The crewmember then turned on the Fuel Oil Transfer Pump in order to begin the transfer. The U.S. Coast Guard later determined through its investigation that crewmember did not perform the internal transfer of fuel properly because he inadvertently failed to shut off the Fuel Oil Transfer Pump after the 500 liters of LSMGO were transferred to the Diesel Oil Storage Tank. Because the Fuel

Oil Transfer Pump was left on longer than it should have been, the pump continued to propel fuel into the Diesel Oil Storage Tank until it was full and overflowed onto the deck through the Diesel Service Tank Vent on the starboard quarter poop deck, after which it then flowed over the Vessel's starboard rail into the waters of the harbor.

14.  At approximately 19:15 hours, another crewmember was making his rounds on the deck and noticed fuel on the starboard quarter poop deck. The crewmember immediately notified the ship's office and Chief Officer of the deck spill.

15.  Shortly thereafter, the Vessel notified the Qualified Individual, O'Briens Response Management (hereinafter referred to as "QI"), of the spill, and the required reports were made to National Response Center and the California Office of Emergency Service. Spill clean-up resources were summoned and a full-scale clean-up operation was undertaken. Based on calculations by the California Department of Fish & Game, it was determined that 1,344 gallons (32 barrels) of oil spilled into the water.

16.  After Defendants became aware of the subject oil spill, they negligently failed to deploy additional retaining booms around the Vessel to contain the spilled oil as required by industry custom and practice and/or Defendants' own procedures and practices.

17.  As a result of Defendants' acts or omissions, when the subject oil spill occurred the boom that had been negligently placed by Defendants failed to contain, catch, retain, prevent or mitigate the amount of oil that traveled down the main channel of the harbor and ultimately leading to the closure of the Port and an extended clean-up operation. Had the retention boom been properly placed around the Vessel in the first instance by the Defendants, the oil that was accidentally discharged from the Vessel would have been contained and retained within the confines of the boom, as is the intended purpose of such prevention booms. In addition, Defendants' negligent failure to deploy additional booms after the subject spill resulted in a further failure to contain, catch, retain, prevent or mitigate the amount of oil that traveled into the waters of the harbor.

18.     As a proximate cause of Defendants' negligence or other improper acts or omissions, Plaintiffs have incurred substantial clean-up costs and additional expenses, which would not have occurred but for the negligence of Defendants. The cost of the clean-up expenses and other damages was at least $2,960,098.05, the actual amount to be shown at the time of trial. Plaintiffs also incurred additional expenses including attorney's fees and costs in connection with the clean-up efforts.

## FIRST CLAIM FOR RELIEF FOR NEGLIGENCE (FAILURE TO PROPERLY BOOM THE VESSEL)

(Against All Defendants)

19.     Plaintiffs re-allege and incorporate herein each and every allegation contained in Paragraphs 1 through 18, as though fully set forth herein.

20.     On February 21, 2011, at the Tesoro Terminal, Berth 84, Port of Long Beach, California, prior to commencing discharge operations Defendants placed an oil retention boom around the outboard (starboard or off-shore) side of the Vessel to contain and retain any oil that might be accidentally discharged from the Vessel. Defendants negligently placed the boom in a manner that was not competent, workmanlike, reasonable and proper and in doing do failed to anchor the boom a sufficient distance from the Vessel required for its retaining capabilities to be properly utilized and used as intended, and instead placed it so that it hugged the starboard side of the Vessel, effectively preventing an adequate on-water containment of any oil accidentally discharged from the Vessel. Such acts were negligent and in violation of industry custom and practice as well as Defendants' own procedures and practices. Defendants also engaged in other acts or omissions that were negligent, improper, unlawful, contrary industry custom and practice and/or contrary to Defendants' own procedures and practices.

21.     The wrongful acts of Defendants alleged herein were grossly negligent and constituted willful and intentional misconduct in that they acted recklessly and with a

conscious disregard of Plaintiffs' rights.

22. As a proximate result of these acts or omissions by Defendants, Plaintiffs have incurred substantial expenses and have been damaged in the amount of at least $2,960,098.05, the actual amount to be shown at the time of trial, as well as attorney's fees and costs incurred in connection therewith.

## SECOND CLAIM FOR RELIEF FOR NEGLIGENCE (POST-BOOMING)
(Against All Defendants)

23. Plaintiffs re-allege and incorporate herein each and every allegation contained in Paragraphs 1 through 22, as though fully set forth herein.

24. On February 21, 2011, at the Tesoro Terminal, Berth 84, Port of Long Beach, California, an oil spill occurred on the Vessel in which oil overflowed into the waters of the harbor. The subject spill became known to the Defendants shortly thereafter.

25. After Defendants became aware of the subject oil spill, they negligently failed to deploy additional retaining booms around the Vessel to contain the spilled oil as required by industry custom and practice and/or Defendants' own procedures and practices. Although there was already a boom around the outboard (starboard or off-shore) side of Vessel since Defendants had pre-boomed the Vessel on arrival at its berth, as detailed above, Defendants failed to properly pre-boom the Vessel to provide for adequate containment of any potential accidental discharge of oil from the Vessel. Accordingly, Defendants' failure to deploy any additional boom around the Vessel after discovery of the subject oil spill was negligent. Defendants also engaged in other acts or omissions that were negligent, improper, unlawful, contrary industry custom and practice and/or contrary to Defendants' own procedures and practices.

26. The wrongful acts of Defendants alleged herein were grossly negligent and constituted willful and intentional misconduct in that they acted recklessly and with a conscious disregard of Plaintiffs' rights.

27. As a proximate result of these acts or omissions by Defendants, Plaintiffs have incurred substantial expenses and have been damaged in the amount of at least $2,960,098.05, the actual amount to be shown at the time of trial, as well as attorney's fees and costs incurred in connection therewith.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For the principal sum, of at least $2,960,098.05 in addition to other fees and/or interest thereon at a legal rate, the actual amount of which will be determined at the time of trial;

2. For costs of suit and attorneys' fees incurred in this matter herein;

3. For prejudgment interest; and

4. For such other and further relief as the Court deems just and proper.

DATED: August 2, 2013                KAYE, ROSE & PARTNERS, LLP


By     */s/ Frank C. Brucculeri*
    Bradley M. Rose
    Frank C. Brucculeri
    Daniel F. Berberich
    Attorneys for Plaintiff
    NORTH OF ENGLAND PROTECTING AND
    INDEMNITY ASSOCIATION LIMITED,
    UNITED AFRICA PETROLEUM LIMITED,
    and GENERAL NATIONAL MARITIME
    TRANSPORT COMPANY

**REQUEST FOR JURY TRIAL**

Plaintiffs, Plaintiffs NORTH OF ENGLAND PROTECTING AND INDEMNITY ASSOCIATION LIMITED and GENERAL NATIONAL MARITIME TRANSPORT COMPANY, request trial in the above-mentioned case by jury.

DATED: August 2, 2013                KAYE, ROSE & PARTNERS, LLP

By   */s/ Frank C. Brucculeri*
Bradley M. Rose
Frank C. Brucculeri
Daniel F. Berberich
Attorneys for Plaintiff
NORTH OF ENGLAND PROTECTING AND INDEMNITY ASSOCIATION LIMITED, UNITED AFRICA PETROLEUM LIMITED, and GENERAL NATIONAL MARITIME TRANSPORT COMPANY